ORIGINAL

J. ANDRÉ BOLES, ESQ.
Nevada Bar No. 003368
18 Stewart Street
Reno, Nevada 89501
Tel: (775) 329-1544

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

**DAVID W. MONROE and
JARED L. HOWES,**

       Plaintiffs,

    vs.

**THE STATE OF NEVADA**, ex Rel., its
Department of Corrections; **JACKIE
CRAWFORD**, Individually and as Director
Of the Nevada Department of Corrections;
**E. K. McDANIEL**, Individually and as
Warden of Ely State Prison; **DEBRA BROOKS**,
Individually and as a Correctional Lieutenant
at Ely State Prison, and **TONY JONES**,
Individually and as a Correctional Sergeant
at Ely State Prison,

       Defendants.

CV-N-05-0329-HDM-RAM

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel (775) 329-1544

    Plaintiffs, for their complaint against the defendants, and each of them, complain and aver as follows:

### JURISDICTION

    1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343 in that these claims arise under the federal civil rights statues, 28 U.S.C. § 1331 in that a federal question exists,  and 28 U.S.C. § 1367 which confers supplemental jurisdiction over state law



claims for relief set forth in this Complaint.  Venue is proper in this district and in this, the unofficial northern division of this district, because the Defendants are subject to personal jurisdiction here, and the claims arose here.

**NATURE OF CASE**

2.      This is an action for relief in damages and for attorney's fees and costs and is brought on behalf of Plaintiffs identified hereinabove on grounds of employment discrimination in the workplace which resulted in Plaintiffs' termination from their employment.  Plaintiffs also seek relief from pendent state tort claims based on actions of individual Defendants named herein committed against Plaintiffs.

**STATEMENT OF THE CASE**

**(Parties)**

3.      Plaintiff David W. Monroe, (hereinafter "Monroe") is a male citizen of the United States and the State of Nevada and resides at 935 Canyon Street, Ely, Nevada 89301.  He is, and at all times relevant hereto,  was employed by the State of Nevada as a senior correctional officer at Ely State Prison, a maximum security prison operated by the Nevada Department of Corrections (hereinafter "NDOC"), formerly the Nevada Department of Prisons (hereinafter "NDOP").

4.      Plaintiff Jared L. Howes, (hereinafter "Howes")  is a male citizen of the United States and the State of Nevada and resides at Carlin, Nevada, having as his legal address P.O. Box 13, Carlin, Nevada 89822.  He is, and at all times relevant hereto, was employed by the State of Nevada as a correctional officer at Ely State Prison.

5.      Defendant Jackie Crawford (hereinafter "Crawford"), is sued individually and as Director of the Nevada Department of Corrections, and she was at all times relevant hereto the Director of the NDOC, formerly NDOP, and a supervisor of the plaintiffs in their employment by the State of Nevada, and she is and was at all times relevant hereto a female citizen of the United States and the State of Nevada and resided in the vicinity of Carson City, Nevada.

6.      Defendant, E. K. McDaniel (hereinafter "McDaniel"), is sued individually and in his official capacity as Warden of Ely State Prison; and at all times relevant hereto he was a supervisor of the plaintiffs in their employment by the State of Nevada, and he is and was at all times relevant

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel (775) 329-1844

2

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel. (775) 329-1544

hereto a male citizen of the United States and the State of Nevada and resided in the vicinity of Ely, Nevada.

7.      Defendant Debra Brooks (hereinafter "Brooks"), is sued individually and in her official capacity as a Correctional Lieutenant at Ely State Prison; and at all times relevant hereto she was a co-worker of the plaintiffs in their employment by the State of Nevada, and she is and was at all times relevant hereto a female citizen of the United States and the State of Nevada and resided in the vicinity of Ely, Nevada.

8.      Defendant Tony Jones (hereinafter "Jones"), is sued individually and in his official capacity as a Correctional Sergeant at Ely State Prison; and at all times relevant hereto he was a co-worker of the plaintiffs in their employment by the State of Nevada, and he is and was at all times relevant hereto a male citizen of the United States and the State of Nevada and resided in the vicinity of Ely, Nevada.

**(Facts of the Case)**

9.      Monroe accepted employment with NDOC on or about September 30, 1995, earned permanent status on September 30, 1996, and rose to the rank of senior corrections officer on November 8, 1999, serving at Nevada's Ely State Prison, a maximum security institution generally in the area of Ely, Nevada.

10.      Howes accepted employment with NDOC on or about January 24, 2000, earned permanent status on or about January 24, 2001, and served at Ely State Prison as a corrections officer.

11.      During the course of their employment with NDOC, Monroe and Howes were active in protecting employee rights and had criticized the administration at their employment for failing to adequately protect employee rights.

12.      In the late afternoon of November 2, 2002, Monroe, Howes and Correctional Officer Trainee Gretchen Hurner (hereinafter "Hurner") were on duty in generally the same cellblock, Unit 5A, of Ely State Prison, and Hurner was in the process of delivering food on trays to inmates in their cells.

13.      One of the inmates, known as Willie Reed (hereinafter "Reed"), refused to follow Hurner's order to go to the back of his cell while Hurner placed his tray in the cell, and he became

3

verbally abusive.  As a result, Hurner did not place a food tray in Reed's cell.

14.     Approximately one hour later, Hurner observed water coming from under the door or Reed's cell, apparently caused by Reed intentionally creating an overflow from either his cell toilet or sink into a prison corridor, creating a puddle near a drain.

15.     Hurner alerted Monroe, who alerted other prison staff, and while Hurner mopped up some of the water five or more other corrections officers including Jones, Brooks and Howes went to the area Reed's cell to inspect that area and ascertain what had happened.

16.     Jones concluded that the amount of water in the overflow was slight and not sufficient to constitute a flood, as defined by prison regulations, and that therefore no incident report had to be written on the overflow. Brooks did not classify the incident as a flood.

17.     Howes was present when Jones decided the water overflow was too slight to warrant an incident report, and Monroe heard Jones' spoken conclusion to that effect over an intercom system.

18.     Upon hearing Hurner's alert and Jones' statements, Monroe made an entry in the prison log book to the effect that there was a flood and that Jones had ordered that water be pushed back under the door to Reed's cell.

19.     Brooks stated that what Monroe wrote in the log regarding Jones' order was not accurate.

20.     Hurner did not write an incident report regarding the water overflow as such, but she did write a report or charging document and then a revised report or charging document on Reed's misconduct; and in those two documents, which she presented to Monroe, she mentioned the water overflow.

21.     Hurner wrote those two documents after she was told by Jones that she had acted improperly in not giving Reed his food tray.

22.     As a result of Monroe's log book entry, all officers who had been involved were asked by higher officers later to submit reports on what they heard and how much water was present.

23.     In her followup report, Hurner alleged falsely that Howes and, to some extent, Monroe pressured her into submitting an inaccurate report, that Howes and Monroe disagreed with how the

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel. (775) 329-1644

4

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89601
Tel: (775) 329-1644

1    event had been handled by Jones and others, that Monroe felt that a flood report should have been

2    prepared, and that Howes and Monroe believed Jones, Brooks and others were trying to get out of

3    additional work by not requiring a report on the water overflow.

4        24.    McDaniel ordered an investigation of the matter, after believing false/misleading

5    entries were reported and about nine months after the incident he caused Monroe and Howes to be

6    served with an "specificity of charges" forms known as an NPD-41s in which their termination from

7    employment was recommended for alleged violation of Nevada Administrative Code (NAC)

8    regulations and parallel NDOC work rules.

9        25.    In the NPD-41, the plaintiffs were accused, *inter alia*, of disgraceful personal conduct

10   which impairs the performance of a job or causes discredit to NDOC, discourteous treatment of the

11   public of fellow employee while on duty, incompetence and inefficiency, dishonesty, and falsification

12   of records.

13       26.    The gravamen of the charges was Monroe made a false entry in the prison log when he

14   was unsure that the comment he reported was accurate and that the two plaintiffs exerted pressure on

15   Hurner to write a report that supported Monroe's log entry in order to get Sgt. Jones in trouble.

16       27.    It was further alleged in the NPD-41 that an investigation revealed that Monroe and

17   Jones had experienced past verbal altercations, that Monroe exploited the November 2, 2002, incident

18   to embarrass Jones.

19       28.    Hurner drew discipline in the form of a three-day suspension for admittedly making a

20   false report.

21       29.    The plaintiffs were subjected to pre-disciplinary hearings in August of 2003 by an

22   associate warden who recommended discipline less severe than termination, but Warden McDaniel

23   upheld NDOC's initial recommendation for termination and fixed termination dates for the plaintiffs

24   in September of 2003.

25       30.    Both plaintiffs appealed their terminations, and a consolidated evidentiary hearing was

26   subsequently conducted by State Personnel Commission Administrative Hearing Officer Patrick

27   Dolan, who by order dated February 10, 2004, reversed the terminations and ordered the plaintiffs

28   reinstated to their former positions with reimbursement for all lost pay and benefits.

31.    Dolan found that Monroe had not been "completely accurate and truthful, that the transgression was only failure to exercise sound judgment, that the evidence did not substantiate lying by Monroe, and that the most severe discipline warranted was a suspension without pay of three working days–the same as Hurner received.

### FIRST CLAIM FOR RELIEF

### (1st Amendment Violation-Retaliation for Exercising Right to Free Speech)

32.    Plaintiffs refer to paragraphs 3 through 31 herein and by this reference incorporates them herein as though they were set forth in full in this place.

33.    Plaintiffs were active on behalf of their fellow employees in organizing people to protect employee rights and had criticized the administration at their employment for failing to adequately provide employee rights. This criticism and also because of the water overflow, caused Defendants Crawford, McDaniel, Brooks and Jones to single out Plaintiffs for their termination.

34.    Crawford, McDaniel, Brooks and Jones, in singling out Plaintiffs, wilfully and unlawfully created for Plaintiffs a hostile work place for the purposes of retribution, and terminating them from their employment because of their exercise of their rights to free speech when they voiced his concern regarding the improper treatment of prison employees.

35.    Said creation of a hostile work place environment deprived Plaintiffs of guaranteed terms, conditions, and privileges of their employment, and of the rights, privileges and immunities guaranteed to them by equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.

36.    In creating a hostile work place for Plaintiffs, Defendants Crawford, McDaniel, Brooks, and Jones, all acting under color of state authority as both individuals and state office holders, individually and severally, subjected themselves to liability in general and special damages to them in an amount exceeding $50,000; and further, in doing the things alleged, they acted arbitrarily, capriciously and maliciously, thereby subjecting themselves liable to them in punitive damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF

### (State Tort Claim–Emotional Distress)

6

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel: (775) 329-1544

37.    Plaintiffs refer to paragraphs 3 through 36 herein and by this reference incorporate them herein as though they were set forth in full in this place.

38.    Defendants Crawford, McDaniel, Brooks and Jones engaged in the aforementioned discriminatory and work place conduct against the plaintiffs by creating a hostile work environment and therefore intentionally inflicted severe emotional distress upon them as victims, entitling them to special and general damages.

39.    The conduct of the defendants was intentional, reckless, extreme and outrageous, and directly resulted in severe emotional distress to Monroe and Howes.

40.    As a direct and proximate result of the outrageous conduct of Crawford, McDaniel, Brooks and Jones, the plaintiffs have suffered and are entitled to the aforementioned damages, including punitive damages.

### THIRD CLAIM FOR RELIEF

### (State Claim–Breach of Contract of Employment)

41.    Plaintiffs refer to paragraphs 3 through 40 herein and by this reference incorporate them herein as though they were set forth in full in this place.

42.    Plaintiffs held their employment with the State of Nevada's Department of Corrections pursuant to a contract of employment which specified rights, terms, conditions, and benefits of that employment.

43.    Plaintiffs performed all of their obligations and duties under that contract for the benefit of the State of Nevada.

44.    The defendants breached that contract by committing the acts described herein which caused the termination of the plaintiffs' employment.

45.    Because of that breach, the plaintiffs are entitled to damages from the defendants to compensate them for the loss of past and future earnings and benefits, including loss of career in law enforcement, lost earning capacity, and damaged credit rating, all in sums exceeding $10,000.00 in amount.

### FOURTH CLAIM FOR RELIEF

### (State Claim–Breach of Covenant of Good Faith and Fair Dealing)

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel. (775) 329-1644

7

46.     Plaintiffs refer to paragraphs 3 through 45 herein and by this reference incorporate them herein as though they were set forth in full in this place.

47.     Nevada law implies a covenant of good faith and fair dealing in contracts both generally, and in contracts for employment, specifically, as follows:

> **Obligation of good faith**. Every contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement.
> NRS 104.1203

48.     Although NRS 104.1203 is part of this State's Uniform Commercial Code, the Nevada Supreme Court as well as federal courts have extended the section to contracts of employment. Reviewing courts have said the obligation of good faith inheres in *every* contract. *K Mart v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, (1987); *Smith v. Claudianos*, 104 Nev. 67, at 69, 752 P.d. 233 (1988); *Hutton v. General Motors Corp.*, 775 F.Supp. 1373, at 1380, (D. Nev. 1991).

49.     The agreement of the plaintiffs and each of them to perform specified duties for the State of Nevada in return for specified pay, fringe benefits and protections is a contract of employment.

50.     The acts of the defendants committed against the plaintiffs in terminating their employment were wrongful and without legal cause, in violation of statutory and implied-in-law covenant of good faith and fair dealing between the State of Nevada on the one hand and the plaintiffs on the other.

51.     As a direct and proximate result of that conduct, the plaintiffs suffered illness, lost earnings, grief and humiliation, and damage to their reputation and career opportunities as alleged herein, all to his special and general damage in an amount to be proved at trial.

52.     The plaintiffs have been required to retain the services of James André Boles , Esq. to prosecute this action and are entitled to a reasonable attorney's fee therefor under 42 U.S.C. § 1988.

### JURY DEMAND

Plaintiffs demand a jury trial as to each defendant and as to each claim.

### PRAYER

WHEREFORE, Plaintiffs pray to this Court:

1.     For an award of nominal damages;

James André Boles, Esq.
18 Street Street
Reno, Nevada 89501
Tel: (775) 324-1644

8

2.    For an award of general damages in a sum exceeding $50,000.00;

3.    For an award of special damages in a sum exceeding $50,000.00;

4.    For an award of punitive damages in a sum exceeding $50,000.00;

5.    For an award of reasonable attorney's fees and costs of suit; and

6.    For such other and further relief as the Court deems just and proper.

DATED this _____ day of June, 2005.

JAMES ANDRE BOLES, ESQ.
Nevada Bar No.003368
18 Stewart Street
Reno, Nevada 89501
Tel: 1-775-329-1544
Attorney for Plaintiffs

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel: (775) 329-1544

9